Estate of Reddy was before the supreme court in 155 Cal. 390, 436, 448, 101 Pac. 8, 443, 448.

## ESTATE OF PATRICK REDDY, DECEASED.
### [No. 23,438; decided September 29, 1906.]

**Estate of Decedent—Title of Heirs and Administrator to Land.—** An administrator is in no sense the owner of the real property of his intestate; the title thereto vests in the heirs, and the administrator has only a lien thereon for the payment of debts and the costs of administration, and he acts only as agent or trustee for the heirs, who are the owners of the property.

**Estate of Decedent—Sale of Land by Administrator or Heirs.—**An administrator cannot, even under an order of court so authorizing him, relinquish the title of his intestate to land within the forest reserve and select other land in lieu of it; but if the administration has so far advanced as to be clear of liabilities, then a deed by the sole heirs and devisees for this purpose will be valid.

**Estate of Decedent.—The Title of Devisees to the Land** of the ancestor comes instantly upon his death; and, subject to the liens of creditors and the temporary right of the administrator, they may at once dispose of the property.

**Estate of Decedent—Sale of Land Pending Administration.**—Where, pending administration, the sole devisees, who are also the heirs and administrators, make a conveyance of a part of the land, as devisees and as administrators, the land remaining unsold should, if a probate sale afterward becomes necessary or expedient, be sold before the land that has been thus conveyed, and the grantees may contest a petition to sell the entire property.

**Judicial Sale—Estoppel to Deny Validity.**—One who causes property to be sold under a void judicial proceeding, and retains the proceeds, cannot question its validity to the prejudice of others who have in good faith relied and acted upon it as valid.

C. H. Oatman, for the executor applicant.

Cushing, Grant & Cushing, for the opponents.

Galpin & Bolton, also, for opponents.

COFFEY, J. This is an application by the executor of the will of Patrick Reddy, deceased, for an order of sale of all of the property of the decedent upon the ground that the sale is for the advantage, benefit, and best interests of the estate and those interested therein.

It is opposed by the contestants, R. M. Cobban and T. B. Walker, on the ground that it is not necessary to pay family allowance, debts, expenses or charges of administration or legacies, and that it would be prejudicial to their interests to the extent of many thousands of dollars, and they assert that since no heir or devisee of the deceased has asked for a sale of the property, and as the executor has no interest in the matter, it is clear that if there be the slightest doubt as to the granting of the petition, it should be resolved in favor of the contestants, who will be irreparably injured if the sale be made, and no one will suffer injury if the petition be denied.

The executor denies that Cobban and Walker have any interest in the premises; and they have no right to be heard in the proceeding.

Patrick Reddy died leaving as his sole devisees and heirs at law his widow, Emily M. Reddy, and his brother, Edward A. Reddy, both since deceased. He left creditors whose claims are still unpaid. While his estate was in course of

administration, the widow and brother being administrators, they undertook to convey a portion of the land of which he died seised to the United States for the purpose if obtaining the right to select other lands belonging to the government in the place and stead of the lands so conveyed. The conveyance was executed by them as devisees and also as administrators. Preceding this transaction certain steps were taken by the administrators, which it may be well to recount, as detailed by the counsel for petitioner. The land described in the deeds had been owned by Patrick Reddy and Mollie Conklin, an undivided one-half interest by each. During his lifetime it appears that he had contemplated selling his interest for use as "base" or forest reserve "scrip" for the selection of other lands under the act of Congress of June 4, 1897, and had given his word to John A. Benson for a sale to him of the selection right pertaining to these lands for a certain price, Benson being a dealer in "scrip" of this character. After Patrick Reddy's death his widow and his brother considered that no better disposition could be made of the lands than that which had been verbally agreed upon by the deceased; and, with this end in view, they filed a petition for an order of sale which came on for hearing on September 18, 1900, when it was granted and an order made for a probate sale by them.

Nothing more was done under this order, but on the next day, September 19, 1900, the court, upon application of the administrators, made an order authorizing them to surrender these lands to the government, to select other lands in lieu thereof, and to sell the lands so selected. This order is conceded to be void and is so treated by the parties to this discussion. Thereafter and on the same date the conveyance referred to was executed. The deeds were accompanied by blank selections, executed by the administrators of the estate of Patrick Reddy, of the lieu lands, and also powers of attorney in blank purporting to authorize the person whose name might be filled in to represent the selectors in the land office, and to convey the lieu lands when the selections had been approved by the land office. All of these instruments, the deeds of surrender of the Monache lands, the applications to select lieu lands, and the powers of attorney were

executed- also by Mollie Conklin, owner of the other undivided half of the lands. The executor calls attention to the fact that although the deeds of surrender to the government of the Monache lands were executed by Mrs. Reddy and Edward Reddy in their individual capacities as well as administrators, the applications to select other lands and the powers of attorney were executed by them solely in their capacity as administrators, and not as individuals, and all the proceedings in the entire transaction subsequent to the execution of the surrender deeds were conducted in their names as administrators of this estate alone, and the money which was paid on account of the purchase price of this scrip was received by them in their official capacity as administrators and applied and accounted for as the property of this estate, and not otherwise.

After making the conveyance to the government they sold to John A. Benson their rights in these lands and to locate lands, and he in turn sold portions thereof to the contestants herein and they located thereunder. The deeds convey the title of Emily M. Reddy and Edward A. Reddy individually as devisees under the will of Patrick Reddy, deceased, and, in addition, Emily M. Reddy, as widow of Patrick, and Caroline S., as wife of Edward, each signed a relinquishment of all rights in said property. The contestants contend that it cannot be disputed that all the right, title, and ·interest of the grantors passed by these deeds, and it is admitted by the stipulation in evidence that the deeds were executed with that purpose; but it is insisted by the executor that the whole transaction was conducted as an affair of the estate of Patrick Reddy and for its use and benefit and that the only purpose in having the surrender deeds for the Monache lands executed by Mrs. Emily M. Reddy and Edward A. Reddy was to confirm and make valid the surrender of these lands to the government by the estate of Reddy in order that that estate, acting through its administrators in their official capacity, might exercise the selection right given by the act of Congress. So, it is claimed by the executor, that it having been established by evidence on this hearing that Benson was acting as a purchaser and not as an agent, the contestants

did not purchase from the Reddy estate, but from Benson, what he had himself already purchased from that estate.

It is asserted, therefore, that Cobban and Walker, whatever payments they may have made to Benson on account of their purchase, or even if they had paid him in full, did not stand in any better position than Benson himself as against the Reddy estate.

As to the situation after all these papers had been executed and delivered to Benson and the surrender deeds put upon record and the "scrip" or supposed rights represented by the blank applications and powers of attorney sold and delivered by him to contestants, the executor says that neither Benson nor Cobban and Walker through him had acquired any title to or interest in the Monache lands because the deeds for these lands ran to the government, and from the very nature of the case it was never contemplated that Benson or his vendees should ever acquire any title to or interest in those lands, nor that anything should pass to him or to them except the selection right based upon a valid surrender of those lands to the government, and this attempted surrender was not valid, for it was not a surrender by the "owner" as required by the act of Congress; although the surrender deeds were valid as conveyances by the devisees, but as devisees they were not the "owners" of the lands. Although the legal title was vested in them under our code, it was so vested subject to administration, and might be defeated by a sale of the lands in course of administration for any of the purposes authorized by the code.

After the contestants made their locations, the government approved a part of the selections made by Cobban, but as to the remainder, and the lands located by Walker, it was claimed that the creditors of Patrick Reddy, deceased, have a lien upon the lands conveyed, and that until that is removed the application cannot be approved. Therefore, the contestants ask that the lands belonging to deceased at the time of his death and which passed to Emily M. and Edward A. Reddy, subject to the liens of the creditors, and which they have not conveyed, be first sold before the Monache lands. The contestants contend that Emily M. Reddy and Edward A. Reddy, being the sole devisees and owners of all

the lands, the same were owned and held by them subject to the liens of creditors of Patrick Reddy; that they having sold a part of the lands and thereby created the rights claimed by contestants, the remainder of the land which they have not sold must first be resorted to to satisfy the claims of creditors. If this be not done and the lienholders resort to the property conveyed to the government, the contestants will lose whatever rights they acquired by purchase from Emily M. and Edward A. Reddy, and this will be an irreparable injury and contrary to conscience and at variance with every principle of expediency and equity, which demands the recognition of the claims of those who have acted in good faith, giving valuable consideration, for what they esteemed a good title.

In the deeds to the government were the words, preceding the description, and after the preamble, "We, Mollie Conklin, a widow, of Bakersfield, County of Kern, State of California, and Edward A. Reddy, of the City and County of San Francisco, State of California, devisee under the last Will and Testament of Patrick Reddy, deceased, also Administrator of the Estate of Patrick Reddy, deceased, do hereby release, remise, quit-claim, grant and relinquish to the United States of America, the said land." Contestants insist that this conveyance passed all the interest which they had in the land; but the executors respond that they were not the owners of the land, and upon this premise seems to depend the contention.

After the papers were executed and placed in the possession of Benson, the contestants, acting in good faith and with the intention and for the purpose of acquiring a good title to said selection right paid to him large sums of money, and in consideration thereof he delivered to each of them papers covering large tracts of Monache lands. It is said that over $2,000 was paid by Cobban and 7,000 by Walker. Over $8,000 of the money thus paid over was used in paying family allowance claims and expenses of administration in this estate. After patenting to Cobban several thousand acres of land based on said surrender of the Monache lands the land department refused to issue further patents, holding that the order of this court of September 19, 1900, was void, and that

it was not apparent from the record that the administration of the estate had proceeded far enough to show that the claims against it had been paid so that the conveyance which the devisees and heirs had made would be effectual.

In the letter of the commissioner he says that by the act of June 4, 1897, the right of exchange is given to the owner of patented land within the limits of a forest reserve, and it is settled that the owner only has the right of selection in lieu of land relinquished; but an administrator is, in no sense, the owner of the real estate of the intestate. In California the title to real estate vests in the heirs and the administrator has only a lien thereon for the payment of debts of the decedent and costs of administration, and he acts only as agent or trustee for the heirs, who are the owners of the property. The commissioner concludes that it is clear, there-fore, that an administrator cannot be recognized as having, even under an order of the court thereunto authorizing him, the right under the law to relinquish the title of an intestate to land within a forest reserve, and to select other land in lieu of it, and that the land selected could not be accepted; but while the selection, as it stands, is clearly the act of Edward A. Reddy and Emily M. Reddy, in their fiduciary capacity as administrator and administratrix, the several deeds of relinquishment were signed by them also as devisees under the will of Patrick Reddy, deceased; and if as to the decedent's title to this land they were the sole devisees under such will, and if the administration of that estate had so far proceeded that the title was free from liability for other legacies, debts, or costs of administration, it would appear that their deeds, as such devisees, were sufficient to vest title to the undivided one-half in the United States; but, the com-missioner said, the record did not disclose this fact; and so, in the circumstances, the selectors were allowed sixty days from notice within which to present satisfactory evidence that, as devisees, they had the title to one-half of the land free and clear of all liens or encumbrances, and, if that should be satisfactorily shown, they would be permitted to so amend their application that the selection would be their individual act and not as administrator and administratrix. So, it would appear from this that the land department recognizes the heir

and not the administrator as the owner who, under the act of June 4, 1897, is entitled to make the surrender and selection; and contestants argue that it is apparent, therefore, that conveyances to them by the administrators would have been worthless, while, on the other hand, the conveyances of the heirs are good as against all but creditors of the estate. The lands involved herein were relinquished and surrendered to the government for the purpose of enabling Edward A. Reddy and Emily M. Reddy to sell the right to acquire other government lands in lieu thereof and the consideration for the conveyance was the money to be received from the sale of the selection right based thereon. Edward A. Reddy and Emily M. Reddy received large sums of money in return for the papers thus executed by them, and this money was used for purposes of administration. These documents were executed for the purpose of transferring their title to the lands and conveying the selection right incident thereto. The purchasers paid their money with view of acquiring that right. The minds of the parties met; the conveyance was completed; and contestants contend that neither the grantors nor their successors can now set it aside, as they are estopped in law and in equity by their own conduct to deny the title of the contestants.

The contention of the executor that the devisees were not the owners of the land does not seem to be supported by the authorities, nor was it the view taken by the commissioner in his letter referred to hereinabove, page 8, lines 10-15. The executor asserts that the attempted surrender of the Monache lands was not valid, because it was not by the "owner," according to the act of Congress, but the government, through its commissioner, said that if it appeared on the record that the administration had so far advanced as to be clear of liabilities their deeds as devisees would be sufficient to vest title in the United States. The act of the administrators would be void, but that of the devisees valid. It is contended, therefore, by the executor, that the attempted surrender by the administrators being void no selection right ever arose or existed which could be the subject of a sale to Benson or by him to his vendees. How, then, the executor asks, have the contestants any interest in this estate, or any of its property,

and how have they been prejudiced except by their own folly in attempting to purchase from Benson something which had no existence? It is not alleged that there was any fraud in the transaction, but that it was the result of a mutual mistake of the law, and that no title passed thereby, and the money paid might be recovered upon the rescission of the contract, which could not have operated to vest in contestants any interest in this estate.

The devisees and the administrators here were identical in person, although, of course, distinguishable in law, and some confusion occasionally occurs from this material identity. As devisees they divested themselves of their title, but as administrators their act was a nullity. Benson bought from them as administrators and then he sold to contestants, who insist that they acted in good faith, believing that they were acquiring a valid title, and upon belief that such was the fact they paid the price. Of this amount over $8,000 was used in paying family allowances, claims and costs of administration. The same persons that executed the conveyance to the government were the recipients of these moneys that came from contestants. It is true that not all of the money paid to Benson reached the administrators; but so far as contestants were concerned the transaction was consummated. They parted with their money upon the assumption that they were securing a right that the vendor was competent, by reason of his purchase from the Reddys, to sell, and now, if the theory of the executor be true, they have neither money nor title. The same persons who sought to sell the selection right were the sole devisees, and it was natural to assume that they were possessed of the power of parting with their own property, although acting nominally in an official or administrative capacity. The title came to them instantly upon the death of their ancestor; subject to the liens of creditors and the temporary right of possession of the administrator, they might at once dispose of the property. Such is the law as declared by our supreme court.

It seems to be shown by this rule of law that Emily M. Reddy and Edward A. Reddy were the absolute owners of all the lands of which Patrick Reddy died seised, subject, however, to the liens already indicated; the deed to the United

States passed the title to the land described, subject to those liens. The creditors, through the executor, are now seeking to enforce their liens. The devisees having taken all the property of the decedent disposed of a part, and the question now is, Shall the unsold part, which was subject to the same liens as that which they sold, be first sold before that part which they did sell is subjected to the lien? The authorities appear to answer in the affirmative. If this view be correct, the contestants have a right to interfere in this proceeding, and to insist that their interests be protected by postponing a sale of the lands conveyed by the devisees to the United States until it shall be ascertained that the other lands are insufficient to satisfy the liens.

The contestants paid full value to Benson, but he turned in less than half to the administrators, and the executor says that the court should bear in mind, here and at all times, that Benson did not purchase this selection right from the devisees, but from the estate of Reddy, and contestants are at most but successors of Benson; and if he or they come forward with an offer to pay the balance of the purchase money due the estate, they will then stand in better position to demand protection from this court for their supposed rights as purchasers. To this it may be answered, that logically, legally, and equitably their position could not be improved by an additional or a double payment.

If, as contended by the executor, they bought something which had no existence, how could their situation be bettered by the proportion of their payment to the whole purchase price? They paid once and in full, and if they have any right at all, it is by virtue of that payment. The record shows that Benson was to pay the devisees about $18,000; it seems that the administrators received but a margin more than $8,000, although the contestants paid him a great deal more than he stipulated to pay his vendors; and the executor declares that it is not just or equitable that for this amount, less than half the agreed purchase price, the estate should be deprived of this valuable property. It is a case of hardship either way it is regarded, but are the contestants to be deprived of what they were the innocent purchasers, for full consideration, and without notice, because of the dereliction

of Benson? He was placed in a position which enabled him to sell to contestants, and they treated him as holding title derived from the Reddys. If the full amount he received from the contestants had been used in discharging his debt to the devisees, it seems to be conceded by the executor that the estate would not be qualified to deny the claim here asserted; that is to say, if Benson had not made default in his obligation to the devisees, or the administrators, or the estate, all being in this case virtually convertible terms, the contestants would be in perfect form to protest this petition; but he did make default, and therefore, the contestants are without remedy.

It is difficult to conceive how, in equity, his failure to keep his bargain with the Reddys to its full extent could affect the character of the transaction with contestants. The Reddys trusted Benson with the title which he conveyed to contestants, and for which they paid in full; but he failed to pay likewise those who had placed faith in him. If anyone should lose, in these circumstances, should it be the contestants, who acted upon the hypothesis that Benson was the owner by right of purchase from the Reddys? It does not seem equitable that they should be called upon to make up the deficit between the amount he actually paid the Reddys, or their representatives as administrators, they acting, in a manner, in a dual capacity; nor does it seem logical that if they derived no title at all, because of the inherent legal vice of the attempted transfer, that vice could be cured by paying twice over, or answering for the miscarriage of Benson in his dealings with the Reddys. If the transaction was valid, it matters not, as to the rights of contestants, what Benson did or failed to do in the performance of his contract with the Reddys; if it was invalid, it could not be aided by the contestants paying several thousand dollars more than they had already paid in complete discharge of their agreement with and to Benson. This is the dilemma presented by the executor's contention; but the law seems to be summed up in the proposition that one who causes property to be sold under a void judicial proceeding and receives and retains the proceeds cannot question its validity to the prejudice of others who have in good faith relied and acted upon it as valid, and this seems to be the situation here. If

this be the law, the contestants have an interest to appear in this matter.

It follows, from an acceptance of this conclusion that the petition of the executor should be denied so far as it applies to the sale of all the property; that is to say, that before resorting to the lands in which the contestants claim to be interested, recourse should be had to the other property to satisfy the claims against the estate. As to the amounts of those claims, the schedule is merely an estimate, and may be accepted for the purpose of this application, except the Benson item. As to the items of attorney's fee and commissions of administrators and executor, there is no occasion for present comment.